OTTERBEIN v. THE IOWA STATE INS. CO.

1. **Insurance:** CONTRACT FOR.   Conceding that making application for
insurance, and the payment of part of the premium to an agent, created
a contract of insurance between the party and the company, yet the
insurance company had the power to reject the application and thereby
annul the contract.

2. ——: AGENT.    The company having exercised its right to reject the
risk, the law will not hold it bound to pay a subsequent loss, because the
agent, by arrangement with the party making the application, retained
the premium note given and the portion of the premium paid, while at-
tempting to induce the company to reconsider its action.

*Appeal from Linn Circuit Court.*

FRIDAY, DECEMBER 9.

. THIS is an action in chancery asking for a specific perform-
ance of a contract to issue a policy of insurance, and to re-
cover thereon the value of the property covered by the contract,
which has been destroyed by fire.    There was a trial upon the
merits and a decree entered dismissing plaintiff's petition,
from which he appeals.

*C. J. Deacon,* for appellant.

*Craig & Collier,* for appellee.

BECK, J.—I.   The plaintiff alleges in his petition that he
made application to defendant, through its general agent, for

insurance upon a house, a stock of goods and other property, and at the same time paid to the agent a part of the premium, receiving from him a receipt in the following words:

" Incorporated 1855. Oldest Company in the State. $12.00. Cedar Rapids, Nov. 24th, 1879. Received of Philip Otterbein, Esq., twelve dollars, being the cash premium of five per cent on application for insurance in the Iowa State Insurance Company at Keokuk, Iowa, which amount is a part of the premium for the first year. Also 50 cents policy and survey fee.                    Curtis Wells, Gen. Agent."

It is farther alleged that defendant accepted the plaintiff's application and thereby became bound to issue to him a policy which it has failed and refuses to do. It is also shown that about two months and a half after the application was made, plaintiff's property was destroyed by fire. The relief claimed is that defendant may be required to specifically perform its contract to issue the policy, and that judgment be rendered for the value of the property destroyed, which is fully covered by the amount insured thereon under the contract relied upon by plaintiff.

The answer admits that plaintiff made application for insurance, accompanied by his note for the premium, which were sent to defendant, but that the application was rejected for the reason that the premium named therein was insufficient, and thereupon the application and note for the premium were returned to the agent, and plaintiff's note and money paid by plaintiff were tendered back to him.

Other allegations of the pleadings need not be here recited.

II.   We need not inquire whether the application and the payment of a part of the premium and other facts of the case created a contract of insurance, but for the purpose of the case we may concede that they did. But if such contract existed, we are very clear that it was subject to be annulled upon the rejection of the application. The evidence leads to this conclusion. The agent was not

1. INSURANCE: contract for.

authorized to issue policies, and the assured made the application with the understanding that it was to be sent to the defendant for acceptance or rejection.

The testimony shows that the application was rejected by defendant, and together with the premium note was returned to the agent who received them from plaintiff. The part of the premium paid was not sent to defendant, but retained by the agent. The plaintiff was informed by the agent that the risk was rejected, and that it would not be taken by defendant, except at a higher rate of premium, which plaintiff refused to pay. Thereupon conversation was had between the agent and plaintiff in regard to placing the risk in another company, and the plaintiff in his testimony declares that the agent informed him he would bring the matter again before the directors of defendant. Whatever may have been the understanding between plaintiff and the agent, certain it is that the plaintiff knew that defendant had declined the risk, except at a higher rate of premium, which plaintiff refused to pay.

III. The plaintiff insists that the risk was not canceled by defendant because the premium note and premium paid by plaintiff were not returned or a tender thereof made to him. The testimony leads us to the conclusion that plaintiff not only knew the defendant had rejected the risk but acquiesced therein. He admits that he understood the agent proposed to send back the application to the defendant and for this reason the note and premium were not given to him. He knew that defendant was authorized to decline the risk, and that after it was rejected he could have no claim against defendant upon the contract.

Defendant having exercised its right to reject the risk, the law will not hold it bound because the agent and the assured united in an attempt to induce it to reconsider its action and issue the policy. Surely the agent and plaintiff could not, by such an arrangement or any other, annul the action of the defendant in rejecting the risk. The agent professed no power

to do such a thing, and of course plaintiff had no authority to nullify the defendant's rejection of the risk. The application having been rejected, defendant's contract, if one existed, was terminated. Any other view of the case would deprive defendant of the right to reject risks and subject it to such unauthorized contracts as the agent and assured might enter into.

The retention of the premium note, and of the part of the premium paid, by the agent was under the arrangement that the subject was to be again brought before the directors of defendant, to which plaintiff assented. It cannot be claimed that defendant continued to be bound by its contract on the ground that the premium and note had not been tendered or returned to plaintiff. By the arrangement with the agent just stated, plaintiff waived the tender and return of the premium.

These views, which are very satisfactory to our minds, dispose of the case, and render unneccessary the consideration of the doctrines advocated by defendant's counsel and supported by many authorities, in an able argument. These doctrines are not in conflict with our conclusions. They are not applicable to the case in the view we take of it.

AFFIRMED.